FILED
2022 Oct-05  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

ELIJAH WADE HUNTER,

    PLAINTIFF,

VS.                                                         CV NO.:

MULTIMETCO, INC.,

    DEFENDANT.                                    JURY TRIAL DEMANDED

## COMPLAINT

### I.  JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, *et. seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    Defendant, Multimetco, Inc., (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## II. PARTIES

3.      Plaintiff, Elijah Wade Hunter, (hereinafter "Plaintiff") is a resident of Anniston, Calhoun County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Eastern Division.

4.      Defendant Multimetco, Inc. (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2), and 29 U.S.C. § 201, *et seq.*   Therefore, this Court has personal jurisdiction over Defendant.

## III. STATEMENT OF FACTS

5.      Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6.      On or about December 18, 2017, Defendant hired Plaintiff as a Processor.

7.      Defendant terminated Plaintiff's employment on July 28, 2021.

8.      Defendant employs or employed Jonathan Smith.

9.      Defendant employs or employed Greg Harrison.

10.   Defendant assigned Smith and Harrison as Supervisors over Plaintiff.

11.   Defendant employs or employed Billy Hunter in its Shipping & Receiving department.

12.   Defendant employs or employed Marlee Johns as its Human Resources Representative.

13.   On or about July 7, 2021, Plaintiff collapsed at work.

14.   As a result of Plaintiff's collapse, Plaintiff's physician removed him from work from July 7, 2021 through July 12, 2021.

15.   On July 7, 2021, Plaintiff notified Smith via telephone that his physician had removed him from work through July 12, 2021.

16.   On July 8, 2021, Plaintiff provided Defendant with his physician's documentation removing Plaintiff from work through July 12, 2021.

17.   During the 12-month period prior to July 7, 2021, Defendant employed Plaintiff for at least 1,250 hours of service.

18.   Defendant employs fifty (50) or more persons for each working day during each of the twenty (20) or more calendar workweeks in the current or preceding calendar year of Plaintiff's July 7, 2021 leave.

19.   During the workweek of July 7, 2021, Defendant employed fifty or more employees that worked within 75 miles of the location where Plaintiff worked.

20.     On July 7, 2021 Plaintiff provided notice of unforeseeable FMLA leave to Smith.

21.     Prior to July 7, 2021, Plaintiff had never previously informed Defendant of the need for FMLA leave.

22.     Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form for his July 7th leave.

23.     Defendant failed to provide Plaintiff with a FMLA Designation Notice form for his July 7th leave.

24.     Defendant failed to provide Plaintiff with a FMLA Certification of Health Care Provider for Employee's Serious Health Condition form for his July 7th leave.

25.     On July 12, 2021, Plaintiff returned to work.

26.     Shortly after returning to work on July 12, 2021, Plaintiff collapsed again.

27.     Smith called the ambulance and Plaintiff was taken to the Emergency Room.

28.     Plaintiff's physician removed Plaintiff from work from July 12, 2021 through July 26, 2021.

29.     On July 12, 2021, Plaintiff notified Smith and Hunter via telephone that his physician had removed him from work through July 26, 2021.

30.    On July 13, 2021, Plaintiff provided Defendant with his physician's documentation removing Plaintiff from work through July 26, 2021.

31.    During the 12-month period prior to July 12, 2021, Defendant employed Plaintiff for at least 1,250 hours of service.

32.    Defendant employs fifty (50) or more persons for each working day during each of the twenty (20) or more calendar workweeks in the current or preceding calendar year of Plaintiff's July 12, 2021 leave.

33.    During the workweek of July 12, 2021, Defendant employed fifty or more employees that worked within 75 miles of the location where Plaintiff worked.

34.    On July 12, 2021, Plaintiff provided notice of unforeseeable FMLA leave to Smith.

35.    Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form for his July 12th leave.

36.    Defendant failed to provide Plaintiff with a FMLA Designation Notice form for his July 12th leave.

37.    Defendant failed to provide Plaintiff with a FMLA Certification of Health Care Provider for Employee's Serious Health Condition form for his July 12th leave.

38.    On July 26, 2021, Plaintiff visited his physician who referred Plaintiff to a Heart Clinic for tests to determine the source of his recent collapses.

39.     Plaintiff notified Defendant via telephone that he would need to be absent from work on July 27, 2021 and July 28, 2021.

40.     On July 27, 2021 and July 28, 2021, Plaintiff underwent testing on his heart at Salame Heart and Vascular Clinic.

41.     On July 28, 2021, Smith telephoned Plaintiff and requested that he report to the office for a meeting.

42.     When Plaintiff arrived, he met with Smith and Johns.

43.     Smith and Johns notified Plaintiff that Defendant had made the decision to terminate Plaintiff's employment due to being a No Call, No Show.

44.     Smith provided Plaintiff with a copy of its Disciplinary Action Form.

45.     Defendant's Disciplinary Action Form stated that "From 7/7/201-7/14/2021 Elijah did not call his supervisor to notify him that he would not be at work due to doctor's appointments or absences due to doctor's excuses. Doctor's excuses were not provided between these two dates. Policy states that 'Two (2) days of unnotified and unapproved absence means that the employee is voluntarily resigning via job abandonment.' Also, "In the event of an unexpected absence or tardiness, contact your immediate supervisor as soon as possible, but no later than one hour before your shift. If your immediate supervisor is unavailable, you must speak with another supervisor or the manager. Leaving a message does not quality as notifying your supervisor.' Also, 'Unverified medical conditions' (i.e., doctor's

excuses given after unapproved absences or No Call, No Show) is not considered an appropriate excuse for the associate's absenteeism."

46.    Although Defendant's Disciplinary Action Form stated "From 7/7/2021-7/14/2021," Smith had crossed out those dates and handwrote "7/8/21-7/9/21."

## IV.   COUNT ONE - FMLA INTERFERENCE

47.    Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 46 above as if fully set forth herein.

48.    Defendant's employees had knowledge that Plaintiff suffered from a FMLA qualifying condition for which he needed treatment from his doctor from July 7, 2021 through July 28, 2021.

49.    Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

50.    Defendant failed to provide Plaintiff with a FMLA Designation Notice form.

51.    Defendant failed to provide Plaintiff with a FMLA Certification of Health Care Provider for Employee's Serious Health Condition form.

52.    Defendant terminated Plaintiff's employment for the stated reason that "From 7/7/201-7/14/2021 Elijah did not call his supervisor to notify him that he would not be at work due to doctor's appointments or absences due to doctor's

excuses. Doctor's excuses were not provided between these two dates.  Policy states that 'Two (2) days of unnotified and unapproved absence means that the employee is voluntarily resigning via job abandonment.'  Also, "In the event of an unexpected absence or tardiness, contact your immediate supervisor as soon as possible, but no later than one hour before your shift.  If your immediate supervisor is unavailable, you must speak with another supervisor or the manager.  Leaving a message does not quality as notifying your supervisor.'  Also, 'Unverified medical conditions' (i.e., doctor's excuses given after unapproved absences or No Call, No Show) is not considered an appropriate excuse for the associate's absenteeism."

53.    Defendant interfered with Plaintiff's FMLA rights by failing to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form.

54.    Defendant interfered with Plaintiff's FMLA rights by failing to provide Plaintiff with a Certification of Employee's Own Serious Health Condition Form.

55.    Defendant interfered with Plaintiff's FMLA rights by failing to provide Plaintiff with a FMLA Designation Notice form, thus confirming that he could commence FMLA leave.

56.    Defendant interfered with Plaintiff's FMLA rights by terminating his employment – thus failing to restore him to his position and not allowing him to return from leave.

57.   As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.   COUNT TWO - FMLA RETALIATION

58.   Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 46 above as if fully set forth herein.

59.   Defendant's employees had knowledge that Plaintiff suffered from a FMLA qualifying condition for which he needed treatment through his doctor from July 7, 2021 through July 28, 2021.

60.   Defendant terminated Plaintiff's employment on July 28, 2021.

61.   Defendant terminated Plaintiff's employment for the stated reason that "From 7/7/201-7/14/2021 Elijah did not call his supervisor to notify him that he would not be at work due to doctor's appointments or absences due to doctor's excuses. Doctor's excuses were not provided between these two dates. Policy states that 'Two (2) days of unnotified and unapproved absence means that the employee is voluntarily resigning via job abandonment.' Also, "In the event of an unexpected absence or tardiness, contact your immediate supervisor as soon as possible, but no later than one hour before your shift. If your immediate supervisor is unavailable, you must speak with another supervisor or the manager. Leaving a message does not quality as notifying your supervisor.' Also, 'Unverified medical conditions'

(i.e., doctor's excuses given after unapproved absences or No Call, No Show) is not considered an appropriate excuse for the associate's absenteeism."

62.     Defendant made the decision to terminate Plaintiff's employment, in whole or part, because of Plaintiff's exercise of FMLA rights.

63.     As a result of Defendant's discriminatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

B.     Award him back pay, together with employment benefits, front pay, liquidated damages; special damages; nominal damages;

C.     Attorneys' fees and costs;

D.     Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 2617(a)(1)(B) that the actions of Defendant violated the law; and,

E.     Any different or additional relief as may be determined by the Court to
which Plaintiff is entitled.


_____
Allen D. Arnold


_____
Whitney Morgan Brown


**OF COUNSEL:**

ALLEN D. ARNOLD, Attorney at Law
6 Office Park Circle, Suite 209
Mountain Brook, AL 35223
T: (205) 252-1550
ada@allenarnoldlaw.com


## PLAINTIFF REQUESTS TRIAL BY STRUCK JURY


_____
OF COUNSEL


**DEFENDANT'S ADDRESS:**
**Multimetco, Inc.**
c/o James B. Roberts
1610 Frank Akers Road
Anniston, AL 36207